IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN L. ALLEN,

                                                                                   OPINION and ORDER

                  Plaintiff,

                                                               08–cv-0037-bbc

     v.

GLEN HEINZL,
JILL HANSON,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for monetary and injunctive relief brought under 42 U.S.C. § 1983. Plaintiff John Allen, a Wisconsin state inmate, suffers from painful cysts in his scrotum; he contends that defendants Dr. Glen Heinzl and Jill Hanson failed to respond properly to his request for medical care in violation of his Eighth Amendment rights.

      Now before the court are the parties' cross motions for summary judgment. Plaintiff asserts that defendants' actions constitute deliberate indifference to his serious medical needs because (1) defendant Heinzl refused to order tests recommended by urology specialists at the University of Wisconsin hospital; and (2) defendant Hanson failed to submit orders for Naproxen and a scrotal support and even after these items were ordered, she refused to

1

insure that plaintiff received them.  Defendant Heinzl contends that he was not deliberately indifferent to plaintiff's medical condition because he monitored plaintiff's condition continuously and prescribed medications to control plaintiff's pain.  Defendant Hanson concedes that she failed to properly post the order for plaintiff's Naproxen and scrotal support, but says she did so inadvertently and not out of deliberate indifference to plaintiff's medical needs.  I find that defendants' contentions are supported by the undisputed facts and I conclude that neither defendant violated plaintiff's constitutional rights.  Therefore, plaintiff's motion will be denied and defendant Heinzl's and Hanson's motion for summary judgment will be granted.

From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

UNDISPUTED FACTS

Plaintiff John Allen is currently at the New Lisbon Correctional Institution in New Lisbon, Wisconsin, where he has been since April 12, 2005.  He has suffered from scrotal pain since 2002.

At all times relevant to this case, defendants Doctor Glen Heinzl and Jill Hanson were employed by the Wisconsin Department of Corrections at the New Lisbon Correctional Institution.  Defendant Heinzl is a physician, whose duties include attending to the medical

2

needs of inmates, diagnosing and treating illnesses and arranging for professional consultations when warranted.  Defendant Hanson is a nurse clinician, whose duties include assessing and treating patients, assisting physicians in providing medical service, managing medications, providing emergency care and maintaining medical records.

Plaintiff first met with defendant Heinzl regarding his scrotal pain on May 9, 2005. Heinzl detected two epididymal cysts, but did not believe any treatment was needed. Plaintiff's pain did not cease.  On August 12, 2005,  defendant Heinzl noted that plaintiff's right testicle was normal in size but that his left testicle was smaller.  Heinzl prescribed Ibuprofen for the pain and scheduled a follow-up visit.

After the August 12 appointment, defendant Heinzl submitted a request for plaintiff to be seen at the urology department at University of Wisconsin Hospital.  On November 4, 2005, doctors at the urology department examined plaintiff.  The urologists conducted tests for sexually transmitted diseases and recommended a uroflow post-voiding residual, a cystoscopy and a prescription for Flomax.  On November 7, 2005, defendant Heinzl met with plaintiff to review the urologists' recommendations.  Heinzl prescribed Flomax and submitted a class III request for plaintiff to have a cystoscopy.

On December 19, 2005, plaintiff met with defendant Heinzl and reported no change in his conditions.  Defendant Heinzl told plaintiff that he was unable to diagnose plaintiff's pain but that the urology specialist at the University of Wisconsin hospital was willing to see

3

plaintiff for more testing. On January 13, 2006, plaintiff visited the urology department and refused to have a cystoscopy until he received the results of the November 4, 2005 test for sexually transmitted diseases. Plaintiff received a second test for chlamydia and gonorrhea. (Neither side has said whether plaintiff has been diagnosed with either disease.)

On March 31, 2006, plaintiff visited the urology department for a cystoscopy, the results of which appeared mostly benign. The urologist recommended a referral to the University of Wisconsin pain clinic. Defendant Heinzl submitted a request to the physicians review committee for plaintiff to be seen at the pain clinic on April 3, 2006. On May 9, 2006, plaintiff reported a new pea sized lump in his testicle, but defendant Heinzl did not detect any lumps when examining plaintiff.

On August 23, 2006, plaintiff visited the University of Wisconsin pain clinic, which recommended a referral back to the urology department and consideration of a CT scan. On September 15, 2006, defendant Heinzl submitted a request for plaintiff to be seen again by the urology department at the University of Wisconsin.

On November 10, 2006, plaintiff visited the urology department at the University of Wisconsin. The urologist's impression was that plaintiff's right testicle had increased in size because of "compensatory hypertrophy" caused by a childhood hernia. The urologist noted tenderness in the epididymis but no significant pain. The urologist recommended Naproxen twice a day for a two-week period, a scrotal support and a follow-up visit in one

4

month.

On November 13, 2006, defendant Heinzl reviewed the urologist's recommendations and ordered Naproxen twice a day for a one-year period and a scrotal support for plaintiff. All orders are sent to the medication room personnel and posted on the "to-be-issued" board. After the order is made, it is the responsibility of the medication room personnel, not the nursing staff, to follow up the order and to dispense the medicine to the patient when it arrives. The health services unit at New Lisbon did not have Naproxen and the scrotal support in stock at this time. When the medication room does not have an ordered item, the order must be sent to the central pharmacy and noted on the "to-be-issued" board. The central pharmacy will then send the order to the medication room personnel. Once an item is placed on the "to-be-issued" board, it is the duty of the medication room personnel and not the nurses to monitor the order. Once the order is received, the medication personnel will check the "to-be-issued" board and dispense the medication or medical equipment to the patient.

Sometime after November 13, 2006, plaintiff met with defendant Hanson, who told him the health services unit at New Lisbon did not have Naproxen or scrotal supports in stock but that she would order them. Defendant Hanson faxed defendant Heinzl's order to the central pharmacy. Through an oversight, Hanson failed to place the order on the "to-be-issued" board.

5

On December 11, 2006, plaintiff filed an inmate complaint because he had not received the Naproxen or the scrotal support. (The parties dispute whether before filing his complaint plaintiff asked defendant Hanson about the order on two occasions and whether on the first occasion she told plaintiff that they had not yet arrived and on the second occasion she told him they still had not come in and to stop asking.) An inmate complaint examiner investigated plaintiff's complaint and made the following determinations:

> On 12-12-2006 the ICE interviewed HSU Manager C. Warner and Nurse Hanson and reviewed the medical file. File notes show that on 11-10-2006 the inmate was seen by Matthew W. Christian, MD Urology Resident at the UW Clinic. File notes from that visit show these recommendations: Naprosyn [sic] 500 mg b.i.d. for a 2 week period, wear scrotal support, if options do not provide relief prefer [sic] patient to be seen by pain specialist, follow up appointment at clinic in 1 month. On 11-13-2006 Dr. Heinzl review the medical file and ordered Naproxen 500 mg BID X 1 year, D/C Ibuprofen when he gets Naproxen, Scrotal support X 1 year, Schedule F/U appt UW urology in 1 month. The ICE does not find that antibiotics were recommended by the UW Doctor or ordered by Dr. Heinzl. Upon reading Dr. Heinzl's order with the ICE, and seeing Nurse Hanson's initials and comment "Noted", Ms. Warner checked to see if there were any scrotal supports in the supply room – there were not. Ms. Warner then checked the order list and found that none had been ordered. Ms. Warner then put scrotal supports on the order list and discussed the order and dispensing protocols with Nurse Hanson.

Plaintiff received his Naproxen prescription on December 13, 2006. He received his scrotal support some time later. (In response to defendant's proposed findings of facts stating that plaintiff received his scrotal support on December 16, 2006, plaintiff wrote "no dispute." However, in his own proposed findings of fact, he asserts that it took five months before he

6

received it.)

On January 12, 2007, a urologist at the University of Wisconsin Hospital examined plaintiff again and recommended a CT scan of his upper tracts, a CT urogram, a repeat cystoscopy, physical therapy for "pelvic floor muscle dysfunction" and a follow up appointment at the urology department in one month. On January 31, 2007, defendant Heinzl submitted the urologist's recommendations to the class III review committee for its consideration on a form entitled Prior Authorization for Therapeutic Level of Care. In a space on the form headed "Cost/Benefit," defendant Heinzl wrote: "[t]esting is rather expensive. Not real likely in my opinion to give a definitive diagnosis that will affect treatment. Negative results might be reassuring to patient. Physical therapy would be less expensive and might well be of help." On February 1, 2007, the committee authorized physical therapy for a trial period of six weeks, a trial of amitriptyline for pain, and deferral of diagnostic imaging "for now as unlikely to identify any pathology." On February 21, 2007, defendant Heinzl informed plaintiff of the committee's decision. Plaintiff started physical therapy on March 2, 2007 and it ended on March 27, 2007, because plaintiff reported continued pelvic pain.

On July 31, 2007, plaintiff submitted a health services request asking, "[W]hen are you going to follow the doctor's request from UW Madison hospital?" On August 1, 2007, the health services unit informed plaintiff that he would be seeing a physician and could

7

discuss his concerns with the physician. On November 21, 2007, plaintiff met with a staff member of the health services unit because he was concerned about cysts on both of his testicles; staff informed plaintiff that these concerns would be forwarded to defendant Heinzl. On January 7, 2008, defendant Heinzl examined plaintiff. Heinzl noted that plaintiff's symptoms were stable and "probably not as intense or frequent as several years prior."

Since January 1, 2008, plaintiff has met with defendant Heinzl on four occasions regarding his pain. On April 28, 2008, plaintiff asked Heinzl to reapply for tests or for an appointment at the urology department. On May 20, 2008, Heinzl submitted a second request to the class III committee for a CT scan, a CT urogram, a cystoscopy and a urology follow-up appointment. The committee denied these requests, saying that "[plaintiff] had been extensively worked up and that further workup would probably be futile." The committee recommended symptomatic treatment only.

On June 17, 2008, plaintiff saw a member of the health services staff because of new knots in his testicles. On July 16, 2008, after plaintiff reported increased testicular pain, defendant Heinzl diagnosed plaintiff with chronic pelvic pain syndrome and ordered an ultra sound of plaintiff's cysts, which was performed on July 31, 2008. Plaintiff's ultrasound revealed the following:

    1. There is no definate [sic] finding on the right side to explain the patient's

8

>palpable lump in the right testes. Close clinical correlation is recommended.
>2. Asymmetry of testicular size. The right testes is rather large in size, but shows otherwise normal appearances. The left testes is smaller in size and has altered echotexture, particularly in a subcapsular location at the lower pole. This is likely to reflect a prior insult. There is no intratesticular mass lesion identified and there is no altered flow pattern.
>3. A small cyst is identified in the left epididymis.

Although defendant Heinzl does not know the cause of plaintiff's testicular cysts, he does not believe they present a risk of harm other than the pain they cause.

## OPINION

### A.  Summary Judgment Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor. Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

9

B. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103 (1976). To defeat plaintiff's motion for summary judgment, defendants must adduce evidence from which a reasonable jury could infer that defendant were not deliberately indifferent (subjective component) to plaintiff's serious medical needs (objective component). Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). To prevail on defendant's cross motion for summary judgment, plaintiff must adduce evidence from which a reasonable jury could infer that defendants were deliberately indifference to his serious medical needs. Id.

A medical need may be serious if it is life-threatening, carries a risk of permanent serious impairment if left untreated and results in needless pain and suffering when treatment is withheld, Gutierrez, 111 F.3d at 1371-73, or otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). In this case, defendants have conceded for the purpose of summary judgment that plaintiff's scrotal pain constitutes a serious medical need. Dfts.' Br., dkt #33, at 5. Therefore, the only issue to be decided is whether defendants Heinzl and Hanson were deliberately indifferent to plaintiff's scrotal pain.

10

1. <u>Defendant Dr. Heinzl</u>

To prevail on his claim, plaintiff must establish that the defendants were "subjectively aware of [his] serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. <u>Wynn v. Southward</u>, 251 F.3d 588 (7th Cir. 2001). Deliberate indifference is not synonymous with medical malpractice or negligence, but it encompasses acts that are less than purposeful. <u>Duckworth v. Ahmad</u>, 532 F.3d 675, 676 (7th Cir. 2008); <u>Gil v. Reed</u>, 381 F.3d 649, 664 (7th Cir. 2004) ("Deliberate indifference encompasses a broader range of conduct than intentional denial of necessary medical treatment but stops short of negligence in treating a medical condition."). Generally, medical practitioners are entitled to deference in their choice of medical treatment, <u>Sain v. Wood</u>, 512 F. 3d 886, 894-95 (7th Cir. 2008), and it is insufficient to show nothing more than "mere dissatisfaction or disagreement with a doctor's course of treatment." <u>Johnson v. Doughty</u>, 433 F.3d 1001, 1013 (7th Cir. 2006); <u>see</u> <u>also</u> <u>Estelle</u>, 429 U.S. at 107 ("[T]he question whether an X-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice. . . ."). However, deliberate indifference can be inferred when a doctor's treatment decisions are "so far afield of accepted professional standards" that no inference can be drawn that the decisions were actually based on medical judgment."

11

Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006); Steele v. Choi, 82 F.3d 175, 179 (7th Cir. 1996)("If the symptoms plainly called for a particular medical treatment — the leg is broken, so it must be set; the person is not breathing, so CPR must be administered — a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983.")

Plaintiff's motion fails at the outset because he failed to show that Heinzl refused to provide treatment for his pain, disregarded the recommendations of a specialist or exercised medical judgment that fell below accepted professional standards. The undisputed facts show that defendant Heinzl has provided plaintiff ongoing forms of treatment for his scrotal pain since May of 2005. Plaintiff has seen defendant Heinzl for his complaints about scrotal pain at least fourteen times between May of 2005 and July of 2008. During this time, Heinzl has prescribed three different forms of pain medication, Ibuprofen, Flomax and Naproxen, and ordered a scrotal support. He has submitted four requests for plaintiff to be seen by urology specialists at the University of Wisconsin Hospital and one request for plaintiff to be seen by doctors at the University of Wisconsin pain clinic. He has ordered an ultrasound performed as recently as July of 2008. Although defendant Heinzl has not been able to diagnose the source of plaintiff's pain, he has continuously monitored and treated plaintiff's condition with examinations, testing and medication.

With respect to plaintiff's contention that defendant Heinzl disregarded the

12

specialist's recommendations, the undisputed facts show that Heinzl did adhere to the specialists' recommendations. At plaintiff's November 4, 2005 visit to the urology department, the doctor recommended a uroflow post-voiding residual, a cystoscopy and a prescription of Flomax. Three days later, defendant Heinzl ordered a prescription for Flomax and submitted a request for a cystoscopy. On March 31, 2006, plaintiff received a cystoscopy at the urology department. At this appointment, the urologist recommended that plaintiff visit the University of Wisconsin pain clinic. On April 3, 2006, defendant Heinzl submitted a request for plaintiff to visit the pain clinic. When plaintiff visited the pain clinic on August 23, 2006, the doctors recommended a return visit to the urology department and defendant Heinzl submitted another request for him to do so.

Plaintiff visited the urologist at the University of Wisconsin on two more occasions. On November 10, 2006, the urologist recommended Naproxen, a scrotal support and a follow up visit. On plaintiff's follow-up visit on January 12, 2007, the urologist recommended a CT scan of his upper tracts, a CT urogram, a repeat cystoscopy and physical therapy for "pelvic floor muscle dysfunction." Defendant Heinzl's response was to order the Naproxen and scrotal support recommended by the specialist and submit a request on plaintiff's behalf for the additional tests and physical therapy recommended by the urologist. The class III committee at New Lisbon approved physical therapy but chose not to order additional testing. Plaintiff received physical therapy for a trial period that was discontinued

on March 2007 because it caused him too much pain. Therefore, defendant Heinzl has adhered to almost all of the urologist's recommendations.

Plaintiff relies on the Seventh Circuit Court of Appeals' decisions in Gil v. Reed, 381 F.3d 649 (7th Cir. 2004), and Jones v. Simek, 193 F.3d 485 (7th Cir. 1999) for the proposition that the refusal to follow a specialist's orders or recommendations may give rise to an inference of deliberate indifference. However, plaintiff's situation is not analogous to the facts of either Gil or Jones. In Gil, the plaintiff's doctor prescribed on "three occasions the very medication the specialist warned against because of its constipating effect (when a non-constipating alternative was available) while simultaneously cancelling two of the three prescribed laxatives." Gil, 381 F.3d at 664. Because there was a genuine issue of material fact with respect to the defendant doctor's state of mind, the court vacated summary judgment in the defendant doctor's favor and remanded the case for further proceedings. Id. The court stated that the defendant doctor could prove at trial that his decisions were simply an exercise in medical judgment. Id. Therefore, the fact that a doctor disregarded a specialists' recommendation alone was not sufficient to award judgment in plaintiff's favor. Plaintiff also needed to show that the defendant doctor failed to act "despite his knowledge of a substantial risk of serious harm." Id.

In this case, defendant Heinzl did not order a form of treatment or medication that directly opposed the recommendations of the urology specialist as in Gil. Further, plaintiff

14

has failed to show that defendant Heinzl failed to act despite knowing of a substantial risk of serious harm. To the contrary, Heinzl recommended physical therapy in a belief that it would help reduce plaintiff's pain.

In Jones, 193 F.3d at 490, the inmate suffered from nerve damage. The doctor promised to schedule him for an appointment with a nerve specialist, but did not do so. Id. After receiving orders from specialists who were treating the inmate, the doctor refused to follow the advice of the specialist. Id. Defendant Heinzl has not failed to take any action and he has not disregarded the recommendations of the urologists as in Jones. Defendant Heinzl did not ignore the specialist's recommendations regarding further tests. Instead, he passed the recommendations to the committee, along with his opinion that physical therapy might be a good alternative before pursuing additional tests.

Whether defendant Heinzl's judgment fell below accepted professional standards is irrelevant. Heinzl did not make the final call. Even if he had, this is not a situation in which the need for additional tests is blatantly obvious to the average person. Plaintiff has provided no expert testimony to show that medical experts would have thought it obvious and necessary to order additional tests. Because plaintiff bears the burden of showing that defendant Heinzl's decisions fell below the accepted standard for treating his condition and he has not met that burden, his motion for summary judgment will be denied. Defendant Heinzl's motion for summary judgment will be granted.

15

2. <u>Defendant Jill Hanson</u>

With respect to the claim against defendant Hanson, the only issue is whether defendant Hanson was deliberately indifferent because she failed to place defendant Heinzl's order for Naproxen and a scrotal support and because she did not insure that plaintiff received these items.

Plaintiff's only ground for believing that defendant Hanson never placed defendant Heinzl's order for Naproxen and a scrotal support is the inmate complaint examiner's finding that Candice Warner checked an "order list" and found no order for a scrotal support. The examiner's report does not indicate whether Warner found that the Naproxen had been omitted from the order list as well, and its is not likely that it was. The facts reveal that one day after the examiner issued her finding on December 12, 2006, plaintiff received his Naproxen, suggesting it had been ordered some time earlier. Although the report did find that no scrotal support had been put on the "order list" ordered before December 12, 2006, the report alone falls far short of showing conclusively that defendant Hanson failed to order the support. Indeed, the undisputed facts show that defendant Hanson faxed an order for Naproxen and the scrotal support to central pharmacy. Because the undisputed facts show that defendant Hanson did place defendant Heinzl's order, plaintiff's motion for summary judgment will be denied on his claim that Hanson was deliberately indifferent to his medical needs by failing to order the Naproxen and scrotal support.

16

Plaintiff argues also that defendant Hanson was deliberately indifferent when she failed to insure that plaintiff received his order for Naproxen and his scrotal support. As noted earlier, the parties dispute whether between November 13, 2006 and December 12, 2006, plaintiff asked Hanson on two different occasions whether his order had arrived, which would have alerted Hanson to the fact that he did not yet have them. However, even if plaintiff did ask defendant Hanson about the medications, his own proposed findings of facts suggest that Hanson was monitoring the items' delivery. According to plaintiff, she advised him that they had not yet come in.

In any event, the facts reveal that after defendant Hanson faxed the order to central pharmacy, it was the responsibility of medication room personnel to insure that plaintiff received the ordered items. It was unfortunate that, in placing the order, defendant Hanson failed to put the order on the "to-be-issued" board, because that mistake led to the failure of the medication room personnel to dispense the order to plaintiff or even note that the items had not arrived. However, Hanson's negligent act is insufficient to show that she acted with deliberate indifference towards plaintiff's medical needs. Walker v. Benjamin, 293 F. 3d 1030, 1039 (7th Cir. 2002)("A negligent or inadvertent failure to provide adequate medical care is insufficient to state a section 1983 claim because such a failure is not an 'unnecessary and wanton infliction of pain,' and is not 'repugnant to the conscience of mankind.'"). Therefore, plaintiff's motion for summary judgment will be denied on his

17

claim that defendant Hanson failed to insure that he received his Naproxen and scrotal support.

Finally, plaintiff contends that defendant Hanson was deliberately indifferent because he did not receive his scrotal support until April of 2007. The parties dispute whether plaintiff received the scrotal support on December 16, 2006 or April of 2007. In his response to defendant's proposed findings of fact, plaintiff did not dispute that he received the scrotal support on December 16, 2006. Plt.'s Resp. PFOF, dkt. # 42, at 25, ¶65. In his proposed findings of fact, plaintiff states that he can "prove that [the scrotal support] was purchase [sic] in April of 2007." Plt.'s Reply PFOF, dkt. # 43, at 6, ¶10. However, plaintiff offers no such proof.

In any respect, even if plaintiff did not receive the scrotal support until April 2007, defendant Hanson was not responsible for this delay. The undisputed facts show that Candace Warner took care of placing an order for the scrotal support on December 12, 2006. Once the order was placed, it was the responsibility of the medication room personnel to monitor the order and not the responsibility of defendant Hanson. Therefore, if plaintiff did not receive his scrotal support until April of 2007, it was not because of defendant Hanson's actions or inactions. "To recover damages under § 1983, plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Because defendant Hanson was

18

not personally responsible for following up on the order for the scrotal support, plaintiff's motion for summary judgment will be denied on his claim that defendant Hanson was deliberately indifferent to his medical need by failing to insure that he received his scrotal support.

## ORDER

IT IS ORDERED that

1. Plaintiff John L. Allen's motion for summary judgment is DENIED.

2. Defendant Glen Heinzl's and Jill Hanson's motions for summary judgment are granted. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 24th day of December, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge